I note that you are handling this case as a part of the pro bono program, and we always thank our lawyers. Does that mean we have to be nice to him? No, it doesn't. Not any different. Thank you for participating, and it allows us to have a better briefing on matters and so that it doesn't promise a result, but it does promise that the better briefing and for to facilitate the court's reasoning process. Thank you. My pleasure. David Timchak on behalf of the appellate Prentice Williams, and may it please the court. Effectively after the briefing, this case is really about two issues. The first issue is whether and after the fact blood draws sufficient controverting evidence to denials of certain signs of impairment. And the second issue is whether or not a vehicle's wheels touching a curb in some unknown and disputed fashion constitutes by itself a sufficient probable cause to arrest somebody on suspicion of DUI. The tires were on the sidewalk. The record isn't exactly clear about how the tires made it onto the sidewalk, whether or not they were traveling when they were on the sidewalk. It's effectively the only undisputed nature of how the vehicle got onto the sidewalk. I'm not familiar with the way that semi-judge motions are handled in Arizona, but for example, in the Central District, there has to be a statement of uncontroverted facts that is supplied, and then there's a response to the statement of uncontroverted facts, whether the facts are controverted or not. And I didn't see that process here. Was there a response? Because I see the defendant's statement of uncontroverted facts, but I didn't see a response to that. So unfortunately in the district court, there wasn't a clear response procedure like you would see in a normal case. I think that had more to do with the fact that it was a pro se litigant at that point. But the flip side to that is the uncontroverted statement of facts of the city of Tempe effectively within themselves admit that there is this dispute as to how the vehicle ended up on the sidewalk. But if you look at what it says in the defendant's statement of facts in support of the motion for semi-judgment, it says, though plaintiff denies that he pulled onto the sidewalk in the manner described by Officer Johnson, he does not deny that his tires drove up onto the sidewalk. Are we supposed to assume that is an undisputed fact? The latter half of it would be undisputed about the fact that the vehicle ended up on the sidewalk. So I said that the tires were on the sidewalk. Correct. And it's 2 o'clock in the morning, right? Correct. But there's a question about reasonable suspicion. They can, right, approach him. It's a traffic violation to touch the curb, so now we have an appeal. They approach him, and then everything gets contested about whether he, I think the judge said he just denies everything. Correct. Any symptoms at all, right? Correct. Okay. So is that, okay, let's, but if we're looking on qualified immunity, there's two prongs. So in terms of that, let's just say you jump over the probable cause part of it, but would a reasonable officer think they have probable cause to arrest him? I mean, that's the catch-all there on a qualified immunity. And it's a little bit of a, it's an odd case in the sense that, so you can just say nothing, and you can say without any further evidence, while there's no evidence that they even knew he was black, he says, I was arrested because I was black. So does that always create a triable issue? I don't think so. I think what we have here is the fact that the only evidence in the record that is established is the fact that the vehicle was on the curb. And I don't think that you could say that a reasonable officer would say in every single circumstance, regardless of any surrounding facts, which are all in dispute, that the second a vehicle- Did he dispute that he wouldn't do the failed sobriety test? Did he dispute that? He wouldn't do the failed sobriety test, right? That is, I believe that's my, yeah, that's my understanding. But he just said, basically, I'm not drinking, but I wasn't drinking, which then we get into that, you know, I think for probable cause, it has to be what happened before. But then the flip side of it is, if he has to put on something more than I was stopped because I was black, does that, the test, and I wasn't drinking, does the subsequent test mean that he didn't meet that burden to create a triable issue? I think it becomes a triable issue because of the fact that the subsequent test, and I believe what you're referencing is the blood draw. Is that correct? Yeah. But I guess what I'm just seeing here is that every, I mean, if you, you see the long view of it, you look at it and you kind of go, okay, that it, since, since you know that he does come, you know, it's not disputed that the validity of the test. So that certainly undermines his credibility that he had been drinking as far as that goes. But if we're going back to the probable cause and what the officers had in front of them, what does he have to do? You know, if, can anyone, is it enough if every time says, I don't agree with anything that they say, and they stopped me because I was black and there's nothing else, and there's no evidence in the record they even knew who they, they were stopping. So it's like you have a nothing burger case, but if you could just, you know, there are things in summary judgment that say sometimes you need more than just a flat out denial. Agreed. To create a tribal issue. It's a tricky little case. Yeah. I think the word that you used actually highlights the issue is that what this really comes down to is credibility. It doesn't have to be credibility. We wouldn't condone making a credibility determination, but I don't think that's what Judge Callahan is really saying. By the time you get to summary judgment, and one of your points, the first point I think is well taken. The officers didn't have the blood test at the time of the arrest, right? Right. But at summary judgment, the question is whether this should go to a trial, whether this should go forward. So at that point, we would assume the jury would have all of this evidence, and I think the question is whether the jurors at that point, a reasonable juror, any reasonable juror could find in favor of the- The question is the difference between- I wasn't quite done with my question. No. But the difference is between the reasonable suspicion and the proper cause. No, I think, well, let her finish and then you go. This is being the presiding judge. You get to go. You go, you go. I apologize. Not at all. It's just that I agree it's a tricky case, and it just strikes me, counsel, even if I give you all of that, then we're still at summary judgment and the judge has to ask the question of whether or not a reasonable juror could find in your client's favor on this issue, right? Yes. All right. And your client denied everything, including that he didn't even smell like alcohol. But at summary judgment, the juror would know that he had a .49 BAL. Correct. But I would submit that there's nothing- What if we just said that the judge was correct? This is what I'm really trying to get. Why was the judge wrong to say this isn't really a genuine issue of material facts? I think the reason why the judge was wrong was the fact that effectively what we have here is that the officers are pointing to a number of different factors, saying this is what we've used to establish probable cause. And the only point of evidence they have, other than their statements of that and Mr. Williams' statements in contradiction to that, are the blood draw. And I think it's inappropriate to say that any individual with a certain blood alcohol content would, by definition, have these signs of impairment. We'll have to decide that in order to take this to trial, that there is a genuine dispute of material fact. And once the jury would know, a fact finder would know, that he did indeed have alcohol, right? They didn't arrest him for consuming any alcohol, although that's even kind of an issue because the statute reads in Arizona. But why would the district court judge have erred to decide that a jury really could not find in their client's favor? I think the reasoning behind that would be, it really, to me, just turns on whether or not a jury would say that out of this blood alcohol content, we believe he would have on these signs of impairments.  Any one of those signs of impairment, right? Any one of them would have been enough. That hour, having hit the curb, any one of them would have been enough. It might be. I think it would depend somewhat on the actual circumstances of how the vehicle ended up on the curb, because Mr. Williams' testimony is that he was pulling over and wanted to get out of the street. And that's why he ended up there. Well, I think someone's supposed to pull over and go up on the curb. Understood. I mean, I'm not going to say I never have, but you're not supposed to. I interrupted. Judge Wu was trying to ask a question. Well, I think there's just several things. One of ours, first of all, there's two aspects of this. There was reasonable suspicion to stop him. The wheels on the curb definitely provides that. Yes. But the other thing is he was challenging the probable cause to arrest him. The probable cause to arrest him, they could not consider the blood test because the officers didn't know about the blood test. And so, therefore, you can't even use it for purposes of qualified immunity. It just does not come in. And that's the reason why the jury would never get it because, you know, they, well, it might come in for something else, but it wouldn't be used to justify the basis for the arrest at that point in time. So the real issue at this particular situation is in terms of the probable cause for the arrest. If we do not, if we say that the only thing we have is just the wheels on the curb, that's not sufficient for a probable cause to arrest for DUI. And so, therefore, the issue is whether or not there is a material issue of fact and dispute in regards to these other factors that were used or claimed to be used by the officers. In other words, his fumbling with the license, all those things, which you could utilize and which might provide a basis for an arrest at that point in time. Agreed. And I think the fundamental point is the fact. But that doesn't help the claim. No. I agree that those factors could create probable cause. What I'm saying is that I believe that there is a question of fact in relation to those issues. Because like you said, if you don't have... The second prong of Saussure says, if a reasonable officer would have thought that they had probable cause, they're entitled to qualified immunity. Agreed. But I think that still turns on the factual issue, which is in dispute. Well, but it doesn't. But it's a step beyond probable cause. You could still find there wasn't probable... You know, you could find there wasn't probable cause, but that a reasonable officer would have thought there was probable cause. Agreed. On what basis would he find probable cause? Because again, all the facts are in dispute, except for the fact of the two tires on the sidewalk. And that's the position that we're taking. Counsel, is qualified immunity in the answer? It is not. And it's not something that was at issue directly in the district court. The only thing that was raised in the answer was effectively that the district court ruling should be read to say that the blood draw was sufficient to override his denials of these... Right. But we can affirm for any reason. Agreed. And so we're looking to see what happened. And sometimes the orders don't... Maybe a little quick. Trial courts are busy places. But I think the record might be a little different, so I want to give you both a chance to respond, because I tried to look at this. I think that qualified immunity is not in the answer and not at the 12B6 motion. But it was in the summary judgment motion. But the judge didn't rule on it in the summary judgment motion. And then I don't see it in the briefs on in the Ninth Circuit. Is that right? So it's a little bit inconsistent. But I think it was pled or argued in the summary... The opposing counsel can maybe mention this. In the summary judgment motion, the judge didn't rule on it, perhaps because it's not in the answer. But you can help me out later, perhaps, but that's what I saw when I looked. I think you may be correct in that. I'm not entirely sure. You might want to... Okay. I'll give you one minute for rebuttal, even though we've taken you over. All right? Okay. I appreciate it. Thank you. May it please the court. My name is Michael Niederbommer, and I represent Officers Ryan Johnson and Jonathan Seals in this particular case. I just want to address the question regarding the qualified immunity. Yes, it was raised in the summary judgment motion. But it's not in the answer. It's not included in the answer. Perhaps this is why the judge didn't rule on it? Maybe, but I did not... I have to be honest. I did not look at the answer prior to preparing this, and I haven't looked at that answer in quite some time. Fair enough. Are you arguing it on appeal? No. At least not yet. Okay. At least not yet. All right. And the reason... I really don't think qualified immunity is necessary here. And I think we've already addressed the one issue of, and I think the appellant has given up his reasonable suspicion argument regarding whether or not it was proper to initiate the traffic stop. But I think here, there is definite probable cause. And I know we were... Arrest him for what? Arrest him for suspicion of driving under the influence. Okay. So can I... First of all, I wondered if driving on the sidewalk is a jailable offense. Do you know that? It's in the civil code. We were looking. It's in the civil code. We didn't see... It's an infraction, isn't it? It's an infraction. Correct. Okay. So that's not why he was arrested? He was not arrested for driving on the sidewalk. If that was the only thing that was there, he would have been issued either, A, a warning, or B, a citation, and everything else would have been... Okay. So my next question... Sorry to scoot you along, but your time is ticking, and I don't want to take too much of it. The next question I have is, there are these two statutes about driving under the influence with a BAL, the 0.8, and then there's a statute of driving with sort of any discernible amount under the influence of anything. Yeah. While I'm... It's an incredibly strict statute. Was he charged with that? He was charged with both of those. Was he arrested for both of those? Yes, he was. Okay. So how do we get around not having... Since I think there's reasonable suspicion it's conceded, how do you get around not having a dispute of fact at the moment of... Or is that what you're arguing? Well, what I'm arguing, Your Honor, is that... Well, a couple of different things. Is that probable cause, at least according to...   go to the state of Westby, and they can go to the state of Westby, and they can go to of the suspect in order to determine whether there is probable cause. Here, they asked if he was drinking. He denied that he was drinking. That has been definitively proven false later by the blood test. They didn't know that at the time, though. That's his whole point, that they didn't know that at the time. But at the time of summary judgment, right, the question is whether you're going to let this go to a jury, whether the judge must let this go to a jury. And it just seems to me, you heard my spiel, but I'll ask you the same question, why would a judge think that any reasonable juror, knowing about the blood test, could really believe that your client, finding his favor, sorry, his client, thank you, could find his favor on any of the points? He denied everything, that he didn't even smell like alcohol. But that finder of fact would know that he had some alcohol that evening. That is correct. That would be my position, Your Honor, is that there would be, the jury would hear all of that. The level wasn't high enough for the arrest based on his blood level. It was lower than the amount that was necessary to be arrested. For the provision two of the statute. Well, for any provision, all they need is probable cause to think that he was intoxicated and that may have risen to the level to ring the bell. They didn't have to be right about it. That's correct. It's the law, I'm quite familiar with the California law, but in this, this was Arizona. So if you're .08 or whatever that they say, then there's a presumption, but a person still can be intoxicated under that level if, if they're impaired. Like if, like I'm a really small person and I could be a .04, but if I'm driving in an impaired, you know, in an impaired fashion because of the alcohol, even though they wouldn't get a presumption, I could still be found guilty. How does it work in Arizona? You can be found guilty if you have any discernible amount of alcohol in your system and it's to quote the statute, to the slightest degree. Arizona has an incredibly strict DUI law and that is actually, it's the most strict that I've ever seen in any of the states that I've ever worked. So is it, but if you were say, what's the presumptive level when, I mean, he didn't get charged and so there would be a way that you could look at it. Okay. So he's got alcohol in him. He doesn't dispute that he went, that the tires went up on the curb, but let's just assume all of that, but then he doesn't get charged rather than writing a thank you note for not being charged with DUI. He files a lawsuit because he said he got stopped because he was black, right? That's correct. Is that, so when does the presumption kick in? What there, in Arizona, the really is if you have any alcohol in you at all, that's when the presumption that you are impaired comes in, because especially when it's coupled with another driving infraction. But to arrest him, they only had to have probable cause to think that he had, that he was under the influence. That is correct. So if he, if he displayed any of those signs, including smelling of alcohol, since, since a trier of fact would know that he in fact had consumed alcohol, how could, let me ask you, didn't he deny all those facts? He denied that, that, that he'd been drinking. He denied that he had alcohol in his breath. He denied all that stuff. So therefore, what is the undisputed facts other than the tires on the sidewalk that, that you're relying on? The undisputed facts that I'm relying on, and at the summary judgment, and let's, there are a couple moments in time here. He denied the not drinking. He denied all of these signs later after, you know, he was accused of these things. He didn't deny them at the scene. There's no evidence talking about how he denied them at the scene. So the police officers are the only ones that had testified or, you know, that were at the scene. So the officers didn't hear his, well, I don't think that distinction matters. Why does that matter? Well, the reason, the reason why it matters is because I think when, if you're looking at what the officers knew or believed or had reasonable to believe is that they were observing somebody in the late evening, driving something, you know, up on the curb where they determined that, you know, at least they smelled alcohol. But the reason this doesn't help you, I don't think, is because one of the things he says, which is disputed, is that he told them he had not been drinking. And, and, and so this seems to be kind of circular, I mean, to Judge Wu's question, there's two points in time and I'm focusing on one and he's focusing on, which I think is undisputed, where the probable cause is determined as of the time of the arrest. That's correct. And so we keep coming back to all of, as the trial court said, all of the indicia of intoxication were denied by him. He denied everything. That's correct. And he denied everything. But I think that because the blood test, he refused the field sobriety test. He did not deny that. Okay. Uh, he, he did, he admitted that he, uh, uh, refused the field sobriety test. Was there anything about fumbling for the license or anything like that? He denied all that. He denied that he fumbled for his license. He denied that he handed a different card. He denied absolutely everything. I think the deposition is at least part of the record and he denied all of that. So I think that opposing counsel, one of his arguments is that it's very tempting to, to treat this as a, um, credibility issue, right? It sort of lends itself to that. And of course we all know the rule that credibility isn't determined at summary judgment. So do you want to respond to that? Yes, because I think the blood test though is still part of the record. Well, not at the time of the arrest, it's not, it is at the time of summary judgment. I understand. At the time of summary judgment, it is, it is part of the record. So his denials, you know, even at the summary judgment stage that I did not consume alcohol and I think you can extrapolate as to the other fact that, uh, you know, that I didn't smell of alcohol. Can, I mean, it's blatantly contradicted by the fact that he actually did have alcohol. Right. And so what I'm positing is it's not necessarily the case that's tempting. It's close. Uh, it's not necessarily a case that that has to be couched in terms of jurors not believing him or making a, and get a credibility determination so much as finding against him on the fact of whether he exhibited any signs of alcohol. Yeah. Yeah. It's a close line. I agree with you on that one. A little case as Judge Callahan said. It is. But there's, there's also, there's also one other fact that seems to be a skipped over. The one thing that is not contested that at the time that the officers made contact with him, he was chewing gum, uh, which is another classic sign of, uh, at that time of night is, is a sign chewing gum coupled with the distracted about chewing gum. Oh yeah. Well it would coupled, you know, coupled with the other things, uh, officers and the, and the jurors have, uh, testified that, uh, that's a classic sign. Yes. It's to mask the smell of any alcohol. But that's the policeman's expectation, but it does not necessarily show the basis of probable cause. No. I mean, it's just another, but it's, it is part of the totality of circumstances which goes into making the determination of probable cause. Okay. Thank you. Thank you very much. We'll give you one minute. Thank you. I appreciate the extra minute. Um, I think just briefly what I, I think this really comes down to and I think it's where most of the questions have been is this, this idea of where this line needs to be drawn and effectively what this comes down to to me is the fact that to believe that the blood draw and the jury would automatically say that Mr. Williams is not credible because of this blood draw would effectively be saying that every single person with this blood alcohol content exhibits these signs of impairment and I don't think that as a matter of law you can say that fact and to me that's what you would really need to take this out of a credibility determination. Okay. But what about Judge Christian's question? At the end of summary judgment, if, if you believe that there are no juror would, would, uh, believe him, that no juror would find it in his favor, I mean, essentially this dog don't hunt this case. Can you put it down? Yes, but I would think that in order to have that determination, you would have to be able to say that at this blood alcohol content, you would have had these signs of impairment and every, and a juror would, would believe that because of the blood alcohol content. Or any one of those signs of impairment. Correct. That there were these signs of impairment because of this particular level of blood alcohol content. Okay. Thank you. Thank you. And once again, thank you both for your argument and thank you for doing pro bono work for the court. This matter will stand submitted.
judges: Callahan, Christen, Wu